ALAMO CATTLE CO., Sociedad Anonima, v. HALL.

(Circuit Court of Appeals, Ninth Circuit. February 15, 1915.)

No. 2451.

1. APPEAL AND ERROR ☞1064—PREJUDICIAL ERROR—INSTRUCTIONS—FORM AND SUFFICIENCY.

The great length of instructions, or the amount of repetition contained in them, was not necessarily reversible error, though such faults should always be avoided.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. ☞1064.]

2. TRIAL ☞295—INSTRUCTIONS—BURDEN OF PROOF.

In a buyer's action for breach of a contract for the sale of cattle, in which the seller counterclaimed for the refusal of the buyer to accept cattle tendered, the court charged that the burden was on defendant, before it could recover judgment against plaintiff, to show that the cattle tendered fully complied with the contract. It further charged that the burden was upon plaintiff to prove every material allegation of his complaint by a preponderance of the evidence, and that if, upon any of the material allegations of the complaint, the evidence was evenly balanced, or preponderated in favor of defendant, plaintiff could not recover, and the jury should find for defendant, and that, if defendant tendered to plaintiff cattle in accordance with the contract, the verdict must be for defendant. Held that, taken as a whole, the instructions were not erroneous; the instruction that the burden was upon defendant evidently referring to the affirmative matter set up in defendant's answer, upon which it prayed judgment.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 703–717; Dec. Dig. ☞295.]

3. SALES ☞174—EXECUTORY CONTRACTS—BREACH BY SELLER.

Under a contract for the sale of cattle, by which the buyer was to furnish cars for shipping them, and was to guarantee payment in a manner satisfactory to a bank, before each shipment was brought from Mexico into Arizona for shipment, if cattle tendered by the seller did not conform to the requirements of the contract, the buyer had a legal right to refuse to accept them, and the seller's insistence upon such acceptance, and refusal to tender or deliver other cattle in lieu of those rejected, constituted a breach of the contract, and it was immaterial whether the buyer furnished cars, and whether he was ready and able to make the required payment.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 434; Dec. Dig. ☞174.]

4. APPEAL AND ERROR ☞1048—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

In a buyer's action for breach of a contract for the sale of cattle, the error, if any, in excluding a question, asked the buyer on cross-examination, as to whether he did not state to M. that he made a mistake in refusing a tender of cattle, was harmless, where M. testified that the buyer did say that he thought he made a mistake, while the buyer subsequently testified that he told M. that he thought it would have been better to cut out of the herd such of the cattle as complied with the contract, because this would have convinced the seller beyond a doubt that it did not have a train load as required by the contract.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4140–4145, 4151, 4158–4160; Dec. Dig. ☞1048.]

In Error to the District Court of the United States for the District of Arizona; William H. Sawtelle, Judge.

Action by John G. Hall against the Alamo Cattle Company, Sociedad Anonima. Judgment for plaintiff, and defendant brings error. Affirmed.

Frank J. Barry, of Nogales, Ariz., and William M. Seabury, of Phœnix, Ariz., for plaintiff in error.

George J. Stoneman and Reese M. Ling, both of Phœnix, Ariz., and Chas. R. Loomis and Fred C. Knollenberg, both of El Paso, Tex., for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. The plaintiff in error was defendant in the court below to this action, there brought by the present defendant in error to recover damages for the alleged breach of this contract:

"This agreement, made and entered into this 16th day of January, 1913, between the Alamo Cattle Co., S. A., of Magdalena, Sonora, Mexico, hereinafter known as the seller, and Mr. E. W. Myers, of El Paso, Texas, hereinafter known as the buyer, witnesseth as follows:

"For and in consideration of the sum of:

"(Twenty-three) dollars U. S. Cy. for two year old steers;

"(Twenty-eight) dollars U. S. Cy. for four year old steers;

"———— dollars U. S. Cy. for ————;

"———— dollars U. S. Cy. for ————;

the seller agrees to sell and deliver f. o. b. cars at Nogales, Ariz., station, all duties and expenses paid; buyer to furnish cars four thousand to five thousand head of two year old steers and one thousand head of four year old steers as good or better than the Terassas cattle. Payment of these cattle is to be guaranteed in a manner satisfactory to the First National Bank of Nogales, Ariz., before each shipment crosses the line; all to be of full ages at time of delivery.

"The seller also agrees to allow the buyer the privilege of cutting out and rejecting fifteen per cent. of said cattle after all runts, stags (unless otherwise specified), cripples, lump-jaws, sway-backs, blinds, cattle too thin to ship, or unmerchantable cattle have been cut out by the seller.

"Cattle to be branded ᒍ Ɣ.

"The seller hereby acknowledges receipt of (ten thousand) dollars U. S. Cy. in hand paid this day by the buyer, who agrees to pay the balance of the purchase money when said cattle are delivered on board cars, and failing to do so he shall forfeit the amount or amounts advanced on this contract. The seller agrees to pay two dollars, in addition returning the forfeit, on each head he fails to deliver under this contract, which shall constitute entire claim for damages. Cattle to be cut Moraga or Destiladera; buyer to give fifteen days' notice for each delivery in train load lots during April and May, 1913.

"Witness our hands this 16th day of January, 1913.

"Ed. W. Myers.
"Alamo Cattle Co.
"W. Beckford Kibbey, Jr., Prest."

The subsequent assignment of the contract by Myers, and of all of his rights and obligations thereunder, to the plaintiff, is admitted.

In addition to a denial of the alleged breach of the contract on its part, the amended answer of the defendant set up a "separate defense" and also a "counterclaim" against the plaintiff. The separate defense alleged was that at all times during the months of April and May, 1913, the defendant was ready, willing, and able to comply with all of the terms and conditions of the contract on its part, and did so until the

plaintiff failed and refused to perform its part of such terms ·and conditions; that in the early part of April, 1913, the. defendant tendered the plaintiff 1,000 head of cattle of the kind and quality required by the contract, which the plaintiff refused to accept, and that on May 9th of the same year the defendant duly tendered to the plaintiff. "from one thousand *twelve* hundred to one thousand five hundred head of cattle," of the kind and quality it agreed to sell and deliver, and that on May 13th it duly tendered to the plaintiff 1,093 head of the kind and quality required by the contract, but that the plaintiff without right failed and refused—

"to select and accept any of the said cattle so offered and tendered by defendant to the said plaintiff, although the said cattle in every respect fulfilled each and all of the terms and conditions of the said contract relating thereto; and that plaintiff further failed to perform said contract, in that the said plaintiff had not then and there, or thereafter, supplied the cars necessary to receive the said cattle at Nogales, Ariz., in accordance with the terms of said contract. And defendant further alleges that plaintiff further failed to perform the said contract, in that plaintiff had made no arrangement satisfactory to ·the First National Bank of Arizona for the payment of the purchase price of said cattle, in accordance with the terms of the said contract, and that plaintiff has wholly failed and neglected to pay the contract price for ·said cattle, although payment thereof has been duly demanded, and has wholly failed and neglected to perform the terms and conditions of said contract to be by him performed. Defendant further alleges that, at the time defendant entered into said contract with the said Myers, the subject of said contract, namely, the cattle therein specified, and the business connected therewith, was of a speculative character, and that the value and price of the cattle therein described and agreed to be furnished by the defendant to the said Myers was and still is of a fluctuating character; that the amount of damage which defendant might and could sustain by reason of a breach of said contract on the part of the said plaintiff and of a failure upon his part to perform the terms thereof was uncertain in amount and not readily ascertainable, or ascertainable at all, and that the said sum of ten thousand ($10,000.00) dollars mentioned in said contract was and is a reasonable and usual sum to be fixed upon and paid to the defendant as liquidated damages, and not as a penalty or forfeiture, for the breach of the said · contract upon the part of the said plaintiff."

For its counterclaim against the plaintiff the defendant made in its amended answer various allegations in respect to the purchase by it of a large amount of cattle in order to comply with its said contract, the alleged failure of the plaintiff to accept which cattle resulted in certain specified losses and damage to the defendant in the aggregate amount of $17,300, and that "defendant has received payment of no part thereof, except the sum of ten thousand ($10,000.00) dollars," paid by the plaintiff at the time of the execution of the contract. And the prayer of the amended answer was that the plaintiff take nothing by its action, and that the defendant have judgment against the plaintiff on its counterclaim in the sum of $7,300, with interest and costs.

The clear meaning of the contract is that upon receipt of the required 15 days' notice for each train load lot of the specified cattle the seller was to have gathered at Moraga or Destiladera a band of cattle of. sufficient number, from which it had cut all runts, stags, cripples, lump-jaws, sway-backs, blinds, cattle too thin to ship, or otherwise unmerchantable, and from which remainder of the band the buyer was entitled to cut and reject 15 per cent. thereof before accept-

ing the contract cattle. Before such tendered and accepted cattle crossed the line between the two countries, the buyer was required to be prepared to pay the contract price therefor in a manner satisfactory to the First National Bank of Nogales, and the seller was required to deliver, all. duties and expenses thereon paid, such cattle on board the cars at Nogales that the buyer was required to have there ready for that purpose.

That the contract was broken is admitted, and the real issue made by the pleadings and by the proof was, Which party broke it? Upon the part of the plaintiff the contention was that the cattle tendered him by the defendant company were not of the grade or class called for by the contract, and that for that reason he would not receive them, which contention was controverted by the defendant company, and the further claim made on its behalf that the plaintiff had not provided the cars for the cattle, nor for the payment therefor, as required by the terms of the contract.

In respect to the character of the cattle tendered by the defendant company to the plaintiff, the testimony·was more or less conflicting; but there was certainly much testimony given on behalf of the plaintiff tending to show that the cattle tendered to him by the defendant did not answer the requirements of the contract, and for that reason were rejected. That question having been determined by the jury in favor of the plaintiff, and the defendant company having by its letter of May 13, 1913, notified the plaintiff "that, owing to the fact that a herd of two year old steers was tendered you on May 12th, consisting of 1,093 steers, from which we asked you to cut a train load, but which you refused to cut or receive, after having come down expressly to receive these cattle, after due notice according to contract, we consider that you have forfeited all right in the aforesaid contract, and hereby so advise you," the only questions for our consideration are such of the rulings of the court made on the trial and such of its instructions to the jury as were duly excepted to and assigned as error.

[1] The chief objections we see to the instructions are their great length and the amount of repetition contained in them. While both of those faults should always be avoided, they do not necessarily amount to reversible error. A short and logical statement of the issues the jury are required to determine, and a clear and concise statement of the law applicable to them, with such reference to the evidence as may be appropriate, is usually all that is required, and is far more likely to aid the jury in reaching an intelligent verdict than very long and involved instructions.

[2] In the instant case the first point made on behalf of the plaintiff in error, and apparently the one most relied upon by its counsel, is that the court·below erred in giving the jury this instruction:

"You are instructed that the burden of proof is upon the Alamo Cattle Company, before they can recover judgment against plaintiff, to show that cattle alleged to have been tendered on May 9 and 12, 1913, fully complied with the contract in every respect."

It will be observed that the plain effect of that instruction was that *before the cattle company could recover judgment against the plaintiff* the burden would be upon that company to show that the tender

referred to complied with the company's obligation under the contract —referring no doubt to the affirmative matter set up in its answer, upon which it prayed judgment against the plaintiff. But when the court came to instruct the jury in respect to the plaintiff's demand against the defendant it distinctly told them this:

"The jury are instructed that the burden is upon the plaintiff, and it is for him, to prove every material allegation of his complaint by a preponderance of the evidence. If upon any one or more of the material allegations of the plaintiff's complaint the evidence is evenly balanced, or if it preponderates in favor of the defendant, then the plaintiff cannot recover, and the jury should find for the defendant."

And in various places the court told the jury in effect that if they should—

"find that the defendant tendered and offered to the plaintiff the cattle called for in the contract, in the quantity and of the ages specified in the contract, and that such cattle were as good as or better than Terrazas cattle, then the verdict must be for the defendant."

[3] The court also instructed the jury to the effect, and we think properly, that if the cattle tendered by the defendant company did not conform to the requirements of the contract, the plaintiff had the legal right to refuse to accept them, and in that event that the defendant's insistence upon such acceptance and its refusal to tender or deliver other cattle in lieu of them, as manifested by its letter of May 13th, constituted a breach of the contract on its part, in which latter event the furnishing of cars for the transportation of the cattle and the plaintiff's readiness and ability to make the required payment became an immaterial matter, although the plaintiff gave testimony tending to show such ability and readiness on his part.

Taking the instructions as a whole, we are of the opinion that the jury could not have been misled thereby. That view also disposes of the alleged errors respecting the admission and exclusion of evidence regarding the ability and readiness of the plaintiff to make the payments and furnish the cars.

[4] It is also contended on behalf of the plaintiff in error that the court below erred in sustaining the objection to this question asked the plaintiff on cross-examination:

"Q. Did you, or not, state to Mr. Myers, at El Paso, in substance, that you or Mr. Oliver (who was with the plaintiff at the time the tender was made) had made a mistake?"

The objection to the question was that it was not proper cross-examination, and "not competent, unless counsel desire to make this witness their own witness for this purpose." Conceding the competency of the question, and error on the part of the court in sustaining the objection to it, such ruling, in view of the record, was manifestly harmless, for the reason that Myers testified, among other things, that in the latter part of June or the first of July, in discussing this case with Hall:

"I asked him if he didn't think he made a mistake in refusing to cut the cattle, and he said, 'Yes;' that he thought he made a mistake in not cutting them. That is about the extent of the conversation, as I recall."

And the plaintiff, Hall, subsequently testified in regard to the same matter as follows:

"I heard the testimony of Mr. Myers with reference to a conversation in which Mr. Myers stated that I said that I had made a mistake in not cutting the cattle at the time they were offered at the Destiladero Ranch in Mexico. The conversation was this: We were discussing the circumstances as they happened, and I told him that I thought it would have been better if we had gone ahead and cut out of the cattle that there was in the herd, all that did comply with the contract, because we would have convinced the Alamo Cattle Company beyond a doubt that they did not have a train load. He said he could not tell about that; he didn't know whether they did or did not have a train load."

Other objections to the rulings of the court during the trial we do not think require special mention. In none of them do we discover reversible error.

The judgment is affirmed.